*483 OPINION OF THE COURT
Kaye, J.
Appellant, Brown-Forman Distillers Corporation, on this appeal challenges both the State Liquor Authority’s determination that it violated the lowest-price affirmation provisions of the Alcoholic Beverage Control Law, by failing to take into account promotional allowances given to wholesalers outside New York, and the constitutionality of the statute. We hold that the determination of the Authority was supported by substantial evidence and that the questioned provisions of the Alcoholic Beverage Control Law do not violate the Commerce Clause of the United States Constitution.
I
Alcoholic Beverage Control Law § 101-b, prohibiting unlawful discriminations, requires every distiller selling liquor in New York to file monthly with the Authority a schedule specifying the brand or trade name of each item, its container capacity, contents, age, proof, number of bottles per case, and bottle and case price to wholesalers (Alcoholic Beverage Control Law § 101-b [3] [a]). With the schedule, the distiller must file an affirmation stating that the listed bottle and case prices will be “no higher than the lowest price at which such item of liquor will be sold * * * to any wholesaler anywhere in * * * the United States * * * at any time during the calendar month for which such schedule shall be in effect” (Alcoholic Beverage Control Law § 101-b [3] [d]). Appropriate deductions must be made from the scheduled and affirmed prices “to reflect * * * all rebates, free goods, allowances and other inducements of any kind whatsoever” given directly or indirectly outside New York (Alcoholic Beverage Control Law § 101-b [3] [g]). The affirmation provisions have their genesis in a Moreland Commission report demonstrating that New York consumers were grossly discriminated against; in liquor prices for national brands (see, Moreland Commission Report No. 3, at 3-7). The requirement that all discounts be taken into account, itself originating as a response to disorderly and discriminatory pricing practices (see, L 1942, ch 899), is designed to assure that the affirmed price is the true price.
With the approval of the Bureau of Alcohol, Tobacco and Firearms, in all States in which it sells liquor except New York, appellant conducts a promotional program for its wholesalers. In New York the program is precluded by Alcoholic Beverage Control Law § 101-b (2) (b), which permits only specified dis *484 counts. To encourage wholesalers to promote its brands, appellant provides lump-sum credits which are calculated annually and fixed for the year, based on the wholesaler’s volume of past purchases and its sales projections for the coming year. The allowance to each wholesaler is computed on a per-case dollar figure, but since sales projections are used the figure does not necessarily correlate with the actual per-item discount. The allowance may be applied as the wholesalers see fit, although they are expected to discount their prices to retailers and in fact, as appellant stipulated, “the allowances have been used for price reductions or discounts to retail accounts on particular BrownForman brands or container sizes.” While there are “no strings attached” for the wholesaler in its use of the credits, appellant is without obligation to continue providing them, and may terminate the promotional program as to any wholesaler at any time. Appellant conducts market studies to determine how wholesalers are using the credits, and considers how the credits are being used when fixing allowances for the following year. A wholesaler who does not use the allowance to promote Brown-Forman brands thus runs the risk of losing it for future years.
Approximately 20 States have enacted affirmation statutes patterned after New York’s statute. Even where discounts must be reported, no other State has required appellant to lower its affirmation price by virtue of the promotional allowances.
The Authority, on stipulated facts, determined that the promotional credits were payments of the kind required by New York law to be taken into account in the affirmed price schedules (see, Alcoholic Beverage Control Law § 101-b [3] [g]), and that appellant’s failure to reflect the credits on its schedules rendered the accompanying affirmations false. Appellant commenced this article 78 proceeding to challenge that determination as well as the constitutionality of the affirmation statute. Special Term transferred the proceeding to the Appellate Division, which, with one Justice dissenting, confirmed the determination of the Authority, upheld the statute, and dismissed the petition. We now affirm.
II
Characterizing the allowances simply as costs incurred indirectly to promote its product line, appellant contends that there is no rational basis for the Authority’s determination that the annual “no strings” promotional allowances are “rebates, free goods, allowances and other inducements of any kind whatsoever” (Alcoholic Beverage Control Law § 101-b [3] [g]), and that *485 its failure to reflect the allowances on its affirmed price schedules did not constitute a violation of statute. According to appellant, the lump-sum allowances cannot be considered discounts because they are based in part on projections and do not correspond with actual quantities of product sold to wholesalers, rendering it impossible for precise per-item deductions to be made on the filed schedules.
The evidence considered by the Authority supported its conclusion that the allowances in practical application reduce the prices appellant charges wholesalers. Continued availability of the allowances is keyed to a wholesaler’s purchases and its actual use of the credits. Appellant’s wholesalers are expected to discount their prices, and in fact do so. The allowances are calculated on a per-case dollar figure. While that figure may not in fact correspond precisely to per-item discounts based on actual sales, projections are fixed by appellant with the wholesaler, based on experience and other factors, the obvious purpose being to make them accurate. Any real or apparent problem in ascertaining the precise per-item discount for purposes of the lowest-price affirmation is a difficulty built into the design of the program by appellant itself and cannot weigh in its favor. To hold otherwise would be to permit appellant to circumvent the affirmation provisions of the Alcoholic Beverage Control Law, when the program in effect reduces prices to wholesalers in other States.
The determination of the Authority that appellant’s allowance is the functional equivalent of a discount and must be taken into account in the affirmation schedules is supported by substantial evidence, and therefore is sustained (see, 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 181).
Ill
Appellant next contends that the statutory requirement that distillers affirm that they will not sell liquor to wholesalers in the State at a higher price than that at which the same item is being sold anywhere else in the Nation contravenes the Commerce Clause of the Federal Constitution (US Const, art I, § 8). Preliminarily, we note that legislative enactments are presumptively constitutional (see, Montgomery v Daniels, 38 NY2d 41, 54-56; Matter of Malpica-Orsini, 36 NY2d 568, 570, appeal dismissed sub nom. Orsini v Blasi, 423 US 1042). To overcome the presumption, the party alleging unconstitutionality must demonstrate the existence of the infirmity beyond a reasonable *486 doubt (see, Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d 358, 370). That presumption gains added force when coupled with the 21st Amendment to the US Constitution which made control over alcoholic beverage trafficking a matter of policy judgment for the State Legislature (see, New York State Liq. Auth. v Bellanca, 452 US 714, 718; see generally, Note, The Effect of the Twenty-First Amendment on State Authority to Control Intoxicating Liquors, 75 Colum L Rev 1578; Comment, State Liquor Affirmation Practices: Constitutional and Antitrust Problems, 77 Dick L Rev 643, 660-667). The declared policy of New York State is that it is necessary to regulate and control the manufacture, sale and distribution of alcoholic beverages (see, Alcoholic Beverage Control Law §§ 2,101-b), and the challenged provisions implement that legislative determination.
Appellant contends that Alcoholic Beverage Control Law § 101-b (3) constitutes an impermissible interference with interstate commerce because in a given month it restricts distillers’ freedom to lower their wholesale prices in any State once the per-item price has been established for New York. Appellant argues that the first case involving a challenge to the New York affirmation statute in any form, Seagram & Sons v Hostetter (16 NY2d 47, affd 384 US 35) — which upheld its constitutionality — is distinguishable. Seagram was decided at a time when the affirmation requirement related to prices at which liquor items were sold in the month immediately preceding the month to which the schedule applied (see, L1967, ch 798, § 2). The current statute, relating as it does to future prices, has the effect, according to appellant, of fixing the floor for liquor prices for the month on a nationwide basis and therefore runs afoul of the Commerce Clause.
In determining whether a State statute impermissibly burdens interstate commerce, one of two approaches can be taken. Where, as here, legitimate State objectives are credibly advanced in support of the statute, where no patent discrimination against interstate trade exists, and where there is only an incidental impact on interstate commerce, a flexible approach — one that takes into account the practical effect and relative burden on commerce — is employed (see, Philadelphia v New Jersey, 437 US 617, 623-624). It is only when “simple economic protectionism is effected by state legislation” that a stricter rule is applied (Bacchus Imports v Dias, 468 US_, 104 S Ct 3049, 3055; see also, Minnesota v Clover Leaf Creamery Co., 449 US 456, 471; Lewis v BT Inv. Managers, 447 US 27, 36-37).
*487 There is no contention that the New York statute was intended to protect local industry or discriminate against out-of-State enterprise. To the contrary, the affirmation statute was a response to the studied conclusions of the Moreland Commission, amply supported by empirical data, that New Yorkers were being charged unreasonably high prices for liquor as compared with citizens of other States (see, Moreland Commission Report No. 3, at 3-7; see also, Seagram & Sons v Hostetter, 16 NY2d 47, 53-55, affd 384 US 35, supra). The statute was enacted to end discrimination against New York customers.
This history of discrimination, and the legitimacy of this State objective, are not controverted by appellant. Rather, appellant contends that the absence of discriminatory intent on the part of the New York Legislature in enacting the lowest-price affirmation provisions of the Alcoholic Beverage Control Law is irrelevant, and that the statute must be declared unconstitutional on its face, in view of United States Brewers Assn. v Healy (_US _, 104 S Ct 265, affg without opn 692 F2d 275). The case, however, does not compel the conclusion urged by appellant.
Healy involved a challenge to the Connecticut Liquor Control Act requiring brewers to file beer-price schedules together with an affirmation that the prices posted within the State would be no higher than the lowest price at which the beer would be sold in any of the three bordering States (see, 692 F2d, at pp 276-277). The Supreme Court affirmed the decision striking down the statute without opinion, giving binding effect to the determination but not necessarily to the rationale employed by the Second Circuit (see, Mandel v Bradley, 432 US 173, 176; Colorado Springs Amusements v Rizzo, 428 US 913 [Brennan, J., dissenting from denial of certiorari]; Hicks v Miranda, 422 US 332, 344-345; Edelman v Jordan, 415 US 651, 670-671; see generally, Note, Summary Disposition of Supreme Court Appeals: The Significance of Limited Discretion and a Theory of Limited Precedent, 52 B U L Rev 373). Indeed, the view that the effect of Healy upon statutes similar to that in issue is as yet unsettled is supported by Justice Stevens’ concurring opinion to that effect in United States Brewers Assn. v Rodriguez (__ US __, _, 104 S Ct 1581, 1582 [Stevens, J., concurring in dismissal of appeal from 100 NM 216, 668 P2d 1093]).
Moreover, a comparison of the statutes in this case and Healy demonstrates that neither the determination in Healy nor the Commerce Clause requires invalidation of the New York liquor-price affirmation statute.
*488 First, it was undisputed in Healy that the purpose of the statute in question was “to lower the retail price of beer in Connecticut, thereby increasing the purchase of beer by Connecticut residents within the state and generating increased tax revenues for the state” (United States Brewers Assn. v Healy, 692 F2d 275, 276, affg 532 F Supp 1312,1316-1317, supra). The fact that the Connecticut statute was designed to discriminate against out-of-State businesses and protect local taxing interests, while the intent of the New York statute was to prevent continued discrimination against in-State consumers, is relevant to analysis of a statute under the Commerce Clause because of the higher level of scrutiny applicable to protectionist legislation (see, e.g., Bacchus Imports v Dias, 468 US —, 104 S Ct 3049, 3055-3057, supra; Minnesota v Clover Leaf Creamery Co., 449 US 456, 471, supra; Philadelphia v New Jersey, 437 US 617, 624, supra). There was no showing that in either purpose or effect the New York statute advanced State revenue interests and discriminated against out-of-State businesses.
Second, the impact of the New York statute on interstate commerce is slight in comparison with that of the Connecticut statute. A statute that burdens commerce only incidentally will be upheld (see, e.g., Kassel v Consolidated Freightways Corp., 450 US 662; A & P Tea Co. v Cottrell, 424 US 366; Pike v Bruce Church, 397 US 137, 142). The New York liquor-price affirmation statute is nationwide in scope, and imitated by approximately 20 other States throughout the Nation. The Connecticut statute was designed to affect and control regional prices in three targeted States, thereby creating an artificial disparity in interstate pricing. Third, Healy dealt with beer which, unlike liquor — the price of which is already subject to State and Federal control — is susceptible to free price fluctuation. Consequently, a statute stabilizing beer prices within four States necessarily has a greater, more direct impact on interstate commerce than a statute that is only one of a score of enactments relating to a commodity where prices already are highly regulated.
Appellant has not established beyond a reasonable doubt that the affirmation requirements of the Alcoholic Beverage Control Law are on their face unconstitutional, or that thé legislative determination to regulate the sale and distribution of alcoholic beverages in this fashion should be overridden.
IV
Finally, appellant asserts that the affirmation statute is unconstitutional as applied to the particular facts and circum *489 stances of this case because of New York’s unique treatment of the promotional allowances.
New York alone refuses to allow appellant to conduct the program, because the discounts are not within Alcoholic Beverage Control Law § 101-b (2) (b), and of all the affirmation States New York alone treats the credits as allowances to be taken into account in preparing the affirmed price schedule. According to appellant, if it is required to reduce its schedule prices by the allowances, the resulting price would necessarily become the “lowest price” for purposes of other States’ affirmation statutes. Since those States mandate adherence to the lowest price in the country, but have themselves chosen not to prescribe that the promotional allowance be considered in determining in-State prices, the wholesale price in those States would have to be reduced to match New York’s. New York would then require still another reduction in schedule prices to reflect the new “lowest” out-of-State price, and so on. Appellant urges that this downward spiral would ineluctably lead to discontinuance of the promotional program in all States — an impermissible, direct interference with interstate commerce.
Iti making this argument, appellant assumes, and properly so, that other States will enforce their liquor laws. But appellant also requires us to assume that other States will enforce their laws without regard for reality, and this we are unwilling to do.
In analyzing State statutes challenged under the Commerce Clause, “[t]he principal focus of inquiry must be the practical operation of the statute, since the validity of state laws must be judged chiefly in terms of their probable effects” (Lewis v BT Inv. Managers, 447 US 27, 37, supra [emphasis supplied]). No other affirmation State has required reduction of the affirmed price by virtue of appellant’s promotional programs being conducted there. However, wholesalers in those States, unlike New York, are actually receiving the promotional benefits and passing them along where appropriate to retailers. It is certainly reasonable to expect that other States will recognize that the prices on appellant’s New York schedules have been adjusted, because of New York’s statutory requirements, to take into account the effect of credits enjoyed by wholesalers elsewhere — credits which the other States receiving the tangible benefits of appellant’s program apparently have already chosen not to consider in determining the affirmed price.
Appellant has failed to demonstrate beyond a reasonable doubt that the threatened mechanical application of liquor laws by other affirmation States will occur or that a downward price *490 spiral would be precipitated. It would require us to engage in mere speculation were we to declare, on such a tenuous basis, the lowest-price affirmation statute unconstitutional as applied (see, Seagram & Sons v Hostetter, 384 US 35,43, supra; Matter of Admiral Wine & Liq. Co. v State Liq. Auth., 61 NY2d 858, 861).
V
Accordingly, the judgment of the Appellate Division dismissing the petition should be affirmed, with costs.